## Commonwealth *v.* Focht, Appellant.

*Criminal law—Perjury—Evidence.*

A conviction of perjury in swearing falsely in a proceeding before a mayor, cannot be sustained where it appears that there were proceedings before the mayor against two separate parties, that the defendant testified in one of the proceedings, but that he was not examined in the other proceeding in which he was alleged to have sworn falsely in the indictment.

Argued Oct. 7, 1908. Appeal, No. 102, Oct. T., 1908, by defendant, from judgment of Q. S. Lehigh Co., April T., 1908, No. 27, on verdict of guilty in case of Commonwealth v. Daniel Focht. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Reversed.

212    COMMONWEALTH *v.* FOCHT, Appellant.

Statement of Facts—Opinion of the Court.    [38 Pa. Superior Ct.

Indictment for perjury. Before TREXLER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1) instruction, quoted in the opinion of the Superior Court, and (2) in refusing binding instructions for defendant.

*James L. Schaadt,* for appellant.

*Fred B. Gernerd,* district attorney, for appellee.

OPINION BY BEAVER, J., February 26, 1909:

The defendant was tried and convicted under an indictment which set forth that "Daniel Focht, late of the said county, yeoman, on the 9th day of March, in the year of our Lord, 1908, at the county aforesaid and within the jurisdiction of this court, with force and arms, etc., did unlawfully, wilfully, corruptly and falsely swear before the Honorable Charles D. Schaeffer, Mayor of the City of Allentown, County aforesaid and State of Pennsylvania, in the matter heard before his Honor, Charles D. Schaeffer, wherein one May Peters was charged with selling liquor without a license and keeping and maintaining a disorderly house, before whom he testified that he was not at May Peters' house on the morning of the 9th of March," etc.

Section 14 of the penal code, Act of March 31, 1860, P. L. 382, provides: "If any person shall wilfully and corruptly commit wilful and corrupt perjury, or shall by any means procure or suborn any person to commit wilful and corrupt perjury, on his or her oath or affirmation, legally administered either before any committee of the legislature of this commonwealth, or in any judicial proceeding, matter or cause which may be depending in any of the courts thereof, or before any judge, justice, mayor, recorder, alderman or other magistrate, or before any arbitrator, prothonotary, clerk, notary public, commissioner or auditor, appointed by any court of this commonwealth, etc., . . . . shall be guilty of wilfully and corruptly making a false oath or affirmation," etc.

It appeared at the trial in the court below that one, May
Peters, had made information against five cabmen, naming
them, for disorderly conduct at her house on the early morning
of the day upon which a hearing of the said accused men was
held by the mayor of the city of Allentown. The hearing was
continued until the evening of that day, when the defendant,
in consequence of what was said by one or more of the accused,
was brought before the mayor as a witness. The mayor also
testified that, in consequence of the testimony which was
brought out in the hearing of the accused cabmen, he had May
Peters brought before him under the circumstances which he
details in his testimony, which were as follows: "Q. Mr. Schaeffer, were you mayor of the city of Allentown on the 9th day of
March, 1908? A. Yes. Q. Did you sit as a committing magistrate on the evening of the 9th day of March, 1908? A. Yes.
Q. Kindly tell the jury the whole proceeding, so they may have
a good idea of the proceedings and how they came about. A.
Well, I had before me in the morning a question which had developed during the hearing of the case of the occurrence at May
Peters' place the night before—during the hearing it developed—during this hearing between the cabmen, it developed that there was a little difference of opinion as to what
occurred, and I asked them who else was there. Then one of
them said, I think, as near as I can remember the language, says
Dan Focht, he saw it; and the other said ask Dan Focht, he can
tell you all about it, and I said, I will continue the case, that
the question then may be heard in the evening; then the case
was called and the man Focht was called the same evening and
I asked him whether he had been at this particular place when
this racket had taken place with the cab drivers. By the court:
What date? A. I think it was March 9th. Q. So this racket
must have taken place on the 8th. A. No, on Monday morning, March 9th. Then I continued the hearing to the evening of
the 9th of March. Q. That is, the racket took place, according
to the testimony, on the morning of March 9th, then the dates
were the same, and at 9 o'clock in the morning they came up
before you and you had the hearing and then you continued the
hearing until 7 o'clock in the evening? A. 8 o'clock in the

evening. Q. And then in the evening he was sworn by you as a committing magistrate and he testified, No, I wasn't there? A. Yes, sir."

When the mayor was recalled, he was asked by the district attorney: "Q. In this case that Daniel Focht testified to on the evening of the 9th of March, what case did he appear in before you? A. He was subpœnaed to testify in the case against the cab drivers and also expected to testify in the case against May Peters which had developed in the testimony in the morning. Q. Did he there testify in the May Peters disorderly house case and for selling liquor without a license? A. Well, he said he hadn't been there and I had no chance to ask him any questions. By the court: Was he interrogated in both cases or in one? A. It was the first case, he said he hadn't been there, then I didn't get him for the second case."

Whether or not there was a case before the mayor, in which May Peters was, as set forth in the indictment, "charged with selling liquor without a license and keeping and maintaining a disorderly house," in view of all the testimony, may well be doubted. It does not appear that any information was made against May Peters, or that any warrant was issued for her arrest, or that any docket entries were made, in which such a charge was contained, but even if there had been and she had been legally charged with the offense set forth, it clearly appears from the testimony of the mayor that the defendant was not called as a witness in such a case but was a witness in the case of the commonwealth against the five cabmen, in which May Peters was the prosecutor.

Subsequently, on cross-examination, the defendant endeavored to show by the mayor that there had been no separate charge or hearing against May Peters, as appears by the testimony: "Do you mean to say there was a charge on your docket in the morning against May Peters? A. We can't tell, but in the morning it developed that Mrs. Peters was selling liquor according to their statement without a license and at the same time was maintaining a disorderly house, and then I directed the chief of police to have her there and at the same time to have her enter bail of $100 or keep her in custody. By the

Court: Q. Did you dispose of that case singly, or did you hold both hearings at the same time? A. I held them at the same time. Q. So there was no two distinct hearings? A. No, sir, because there was testimony which convinced me that she had violated an ordinance, and I fined her. . . . Q. It was one prosecution? A. Yes, and when a complainant comes to me and he has violated the city ordinance why, I punish him."

However doubtful it may, therefore, be, whether or not May Peters was charged, as alleged in the indictment, with a separate offense, or a separate hearing was held in her case, it is clear from the testimony that the defendant was not examined as a witness in the proceeding in which he is alleged to have sworn falsely in the indictment. There is no allegation that the indictment itself is not good, but that the evidence does not sustain it, and this, upon a careful examination of the testimony, we think is established. The defendant was, therefore, entitled to an affirmance of his fourth point, that "Under all the evidence in the case, the verdict must be one of acquittal," the refusal of which constitutes the second assignment of error.

The defendant also complains in his first· assignment of a qualification to the answer of the court to the affirmance of his first point. The entire answer was as follows: "I could deny this point taken as a whole, but I might lay myself open to be misunderstood by the jury, and I, therefore, affirm it, with this qualification, that it must be taken with my instruction as to what constitutes a reasonable doubt, and further, that the court has already decided that the fact which it is alleged Focht testified to is material. The point is affirmed. In other words, gentlemen of the jury, you must find that he testified in a proceeding had before Mayor Schaeffer against May Peters for keeping a disorderly house or whatever proceeding is charged in the indictment—for selling liquor without a license." The appellant construes this to mean that the court gave binding instructions to the jury to find the fact stated in the qualifying clause in the answer. We do not so construe it. As we view the qualification in the answer, it is as if the court had said, "In other words, gentlemen of the jury, in order to a conviction you must find, or it is necessary that you should find," etc. It simply

tended to guide the jury as to what was necessary to secure a conviction, and did not amount to an express direction to find the facts therein stated. The first assignment of error is not sustained.

Holding as we do, that the evidence did not sustain the indictment in its material averments as to the proceeding in which the testimony of the defendant alleged to be false was taken, we are of the opinion that the conviction cannot be sustained.

Judgment reversed and the defendant is hereby discharged without day.